FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 03, 2021

SEAN F. MCAVOY, CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STASHA H., | NO:  4:20-CV-05130-FVS |
| Plaintiff, | |
| v. | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

BEFORE THE COURT are the parties' cross motions for summary judgment.  ECF Nos. 15 and 16.  This matter was submitted for consideration without oral argument.  The Plaintiff is represented by Attorney Chad L. Hatfield.  The Defendant is represented by Special Assistant United States Attorney

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit.  No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER ~ 1

Benjamin J. Groebner.  The Court has reviewed the administrative record and the parties' completed briefing and is fully informed.  For the reasons discussed below, the court **GRANTS** Plaintiff's Motion for Summary Judgment, ECF No. 15, and **DENIES** Defendant's Motion for Summary Judgment, ECF No. 16.

### JURISDICTION

Plaintiff Stasha H.[2] protectively filed for disability insurance benefits on March 1, 2017, alleging an onset date of May 5, 2013.  Tr. 167-73.  Benefits were denied initially, Tr. 94-100, and upon reconsideration, Tr. 102-08.  Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on August 28, 2019.  Tr. 30-61.  Plaintiff was represented by counsel and testified at the hearing.  *Id*.  The ALJ denied benefits, Tr. 12-29, and the Appeals Council denied review.  Tr. 1.  The matter is now before this court pursuant to 42 U.S.C. § 405(g).

### BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner.  Only the most pertinent facts are summarized here.

Plaintiff was 35 years old at the time of the hearing.  *See* Tr. 167.  She completed high school and two years of college.  Tr. 192.  Plaintiff lives with her

---

[2] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial.

ORDER ~ 2

husband and her children. *See* Tr. 219. At the time of the hearing, Plaintiff was working part-time as a childcare leader. Tr. 57. Plaintiff testified that she typically misses ten hours a month, or three of her working days in a row, due to her "dystonia storms." Tr. 47-48. She reported that if she tries to work more than three hours a day she gets "more storms," and she needs to nap or lay down "a lot" in order to continue working her part time schedule. Tr. 49.

### STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the

ORDER ~ 3

ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's

ORDER ~ 4

work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in

"substantial gainful activity," the Commissioner must find that the claimant is not

disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers

from "any impairment or combination of impairments which significantly limits

[his or her] physical or mental ability to do basic work activities," the analysis

proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment

does not satisfy this severity threshold, however, the Commissioner must find that

the claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §

404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and

award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the

severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity."  Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §

404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is

capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education and

past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of

adjusting to other work, the Commissioner must find that the claimant is not

disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant

numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*,

700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff did not engage in substantial

gainful activity during the period from her alleged onset date of May 5, 2013

through her date last insured of June 30, 2019.  Tr. 17.  At step two, the ALJ found

that, through the date last insured, Plaintiff had the following severe impairment:

functional movement disorder.  Tr. 18.  At step three, the ALJ found that, through

the date last insured, Plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of a listed impairment.  Tr.

19.  The ALJ then found that, through the date last insured, Plaintiff had the RFC

> to perform a full range of light work as defined in 20 CFR 404.1567(b) with
> the following exceptions: she could not climb ladders, ropes, or scaffolds,
> and could frequently stoop, kneel, crouch, crawl, balance, and climb ramps
> and stairs; she could not have concentrated exposure to extreme cold or heat,
> or to hazards, such as unprotected height and moving mechanical parts; she
> could have only superficial contact with the public and coworkers; and she
> required a routine, predictable work environment with no more than
> occasional changes and no fast-paced work.

Tr. 20.  At step four, the ALJ found that, through the date last insured, Plaintiff was

unable to perform any past relevant work.  Tr. 23.  At step five, the ALJ found that,

through the date last insured, considering Plaintiff's age, education, work

experience, and RFC, there were other jobs that existed in significant numbers in

the national economy that Plaintiff could have performed, including: mail clerk,

warehouse checker, and garment sorter.  Tr. 24-25.  On that basis, the ALJ

ORDER ~ 7

concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from May 5, 2013, through June 30, 2019, the date last insured. Tr. 25.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act.  ECF No. 15.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ erred at step two;

2. Whether the ALJ properly considered Plaintiff's symptom claims;

3. Whether the ALJ properly considered the medical opinion evidence;

4. Whether the ALJ erred at step three

5. Whether the ALJ properly considered lay witness testimony; and

6. Whether the ALJ erred at step five.

## DISCUSSION

### A. Step Two

As an initial matter, at step two, a claimant must establish that he or she suffers from a medically determinable impairment.  *See Ukolov v. Barnhart*, 420 F.3d 1002, 1004-1005 (9th Cir. 2005).  The claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings.  20 C.F.R. § 416.908 (1991).  "Under no circumstances may the existence of an impairment be established on the basis of

ORDER ~ 8

1    symptoms alone." S.S.R. 96-4p. Thus, in general, "regardless of how many

2    symptoms an individual alleges, or how genuine the individual's complaints may

3    appear to be, the existence of a medically determinable physical or mental

4    impairment cannot be established in the absence of objective medical

5    abnormalities, i.e., medical signs and laboratory findings." *Id.*

6         Furthermore, for that medically determinable impairment to be considered

7    'severe' at step two of the sequential analysis, it must significantly limit an

8    individual's ability to perform basic work activities. 20 C.F.R. § 416.920(c);

9    *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). An impairment that is 'not

10   severe' must be a slight abnormality (or a combination of slight abnormalities) that

11   has no more than a minimal effect on the ability to do basic work activities. SSR

12   96-3p, 1996 WL 374181 at *1 (July 2, 1996). Plaintiff bears the burden to

13   establish the existence of a severe impairment or combination of impairments,

14   which prevent him from performing substantial gainful activity, and that the

15   impairment or combination of impairments lasted for at least twelve continuous

16   months. 20 C.F.R. §§ 416.905, 416.912(a); *Edlund v. Massanari*, 253 F.3d 1152,

17   1159-60 (9th Cir. 2011). However, step two is "a de minimus screening device

18   [used] to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. "Thus, applying

19   our normal standard of review to the requirements of step two, we must determine

20   whether the ALJ had substantial evidence to find that the medical evidence clearly

21   established that [Plaintiff] did not have a medically severe impairment or

ORDER ~ 9

combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Here, the ALJ found at step two that Plaintiff had the severe impairment of functional movement disorder. However, the ALJ further concluded that Plaintiff "has no medically determinable neurological impairment… . [S]he has consulted at least two neurologists, both of whom found that her movement disorder was 'functional,' i.e. psychiatric, and that she did not demonstrate signs or symptoms indicative of a physiologically-based neurological disorder." Tr. 18. Plaintiff argues that the ALJ "erred by dismissing [Plaintiff's] severe impairment of dystonia as groundless at step two." ECF No. 15 at 12-13. In support of this finding, Plaintiff cited ongoing diagnoses by "numerous physicians" of "dystonia, dystonia storms, and/or dystonic movements based on her longstanding symptomology of severe widespread spasms, abnormal movements, and facial tics." ECF No. 15 at 12; Tr. 298 (facial twitching noted and diagnosis of "movement disorder consistent with dystonia"), 300-01, 305-07 (facial twitching noted and dystonia diagnosis), 318 (facial tics noted and dystonia diagnosis), 330 (noting uncontrollable twitching in arms and legs, and right facial sagging), 383 (facial tics noted and dystonia diagnosis), 407 (noting observed "dystonia storm with severe widespread muscle spasm/abnormal scissoring gait using walker to ambulate"), 421 (noting "frequent and at times continuous spasms or tightening of the left side of her face" that sometimes moves to the right side of her face or

ORDER ~ 10

becomes bilateral), 441 (noting Plaintiff was "evaluated by a neurology specialist

with extending reported diagnoses including dystonia), 442 (noting observed

"dystonia storm with severe widespread muscle spasm/abnormal scissoring gait

using walker to ambulate"), 448 (diagnoses include dystonia and dystonic

movements), 464 (noting right facial droop and moderate dysarthria), 475 (noting

left sided facial twitching and intermittent right facial droop), 481 (noting period

contortion of left side of face and droop of right side).

Defendant summarily argues that the ALJ's finding at step two was

supported by substantial evidence because "[t]wo different neurologists, Anitha

Raghunath, M.D., and Shu-Ching Hu, M.D. examined Haynes and concluded that

she had functional movement disorder, not dystonia."  ECF No. 16 at 3 (citing Tr.

421, 483).  However, the Court notes that Dr. Raghunath listed both dystonia and

functional movement disorder under "active problems," noted "safety during

ambulation or standing up should also be advised," and her "impression" was

"likely functional movement disorder."  Tr. 483-84.  Dr. Hu noted that Plaintiff

displayed "frequent and at times continuous spasms or tightening of the left side of

her face" but she "seemed to be able to suppress these movements when she tries

hard."  Dr. Hu diagnosed Plaintiff with functional movement disorder,

recommended that Plaintiff "continue a non-pharmacological approach, a 'holistic'

approach that she has been pursuing," and further recommended "cognitive

behavioral therapy by a psychologist experienced in managing functional

*neurological* disorders." Tr. 421 (emphasis added). Further, contrary to the ALJ's finding at step two, neither neurologist explicitly noted that Plaintiff's movement disorder was "psychiatric"; rather, they found that her movement disorder was "functional" based on inconsistency of her movements and the unremarkable results of her diagnostic workup. *See* Tr. 421, 483. Finally, at no point in the decision did the ALJ consider Plaintiff's treating the medical expert's testimony as follows:

> [Plaintiff] has been evaluated by two different neurologists who were unable to find the cause of her twitching and therefore assumed that it was on a psychological basis and I find that is not an acceptable interpretation because of the fact that one can have similar types of problems on a variety of genetic bases. Those were not – and that was not evaluated and assume we have a standard definition of her problems. . . . But the dystonia she has, I think equals [listing 11.02 for epilepsy].

Tr. 36.

Based on the foregoing, the Court finds that the ALJ's conclusory finding that Plaintiff "has no medically determinable neurological impairment," based solely on two examining opinions, and without setting forth any specific analysis as to ongoing diagnoses of dystonia, accompanied by remarkable clinical findings on physical examination, was not supported by substantial evidence. *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in a claimant's records while ignoring others).

ORDER ~ 12

1    Defendant contends that regardless of any error, Plaintiff failed to show the

2    ALJ's finding at step two resulted in "harm," because "an error at step two can

3    only prejudice a claimant if it warrants a different finding at step three or a

4    different residual functional capacity finding."  ECF No. 16 at 3 (citing *Burch v.*

5    *Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)).  An error is harmless if "there

6    remains substantial evidence supporting the ALJ's decision and the error 'does not

7    negate the validity of the ALJ's ultimate conclusion.'"  *Molina*, 674 F.3d at 1115

8    (*quoting Batson v. Comm'r of Soc. Sec. Admin*, 359 F.3d 1190, 1197 (9th Cir.

9    2004)).  Thus, if a claimant prevails at step two and the ALJ considers all

10   impairments - regardless of severity - in the subsequent steps, an ALJ's failure to

11   consider an impairment "severe" is harmless.  *See Lewis v. Astrue*, 498 F.3d 909,

12   911 (9th Cir. 2007).  Here*,* Plaintiff prevailed at step two; however, the ALJ did

13   not consider any physical limitations at step three because Plaintiff's "functional

14   movement disorder is properly considered a mental impairment," and the ALJ

15   summarily dismissed the medical expert opinion that Plaintiff met a listing at step

16   three because "[he] cannot find that [Plaintiff] equals a listing without a medically

17   determinable impairment."  Tr. 19, 23; *Cf. Lewis,* 498 F.3d at 911 (holding that

18   ALJ's failure to list plaintiff's bursitis as a severe impairment at step two was

19   harmless where ALJ specifically discussed bursitis and its effects when identifying

20   the basis for limitations in the RFC; and considered limitations caused by bursitis

21   at step four).  Thus, the ALJ's failure to properly consider Plaintiff's impairments

ORDER ~ 13

at step two cannot be considered harmless, because he confined his analysis to mental impairments at subsequent steps of the sequential analysis. The ALJ's selective review of the record permeated the ALJ's entire decision and impacted the analysis at the subsequent steps.

Based on the foregoing, this case must be remanded in order to determine whether all of Plaintiff's claimed impairments were medically determinable and severe, and, if so, to consider any credible limitations arising out of Plaintiff's impairments at all subsequent steps in the sequential evaluation.

**B. Symptom Claims**

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

1  rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

2  citations and quotations omitted).  "General findings are insufficient; rather, the

3  ALJ must identify what testimony is not credible and what evidence undermines

4  the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th

5  Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ

6  must make a credibility determination with findings sufficiently specific to permit

7  the court to conclude that the ALJ did not arbitrarily discredit claimant's

8  testimony.").  "The clear and convincing [evidence] standard is the most

9  demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

10  1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920,

11  924 (9th Cir. 2002)).

12       Here, the ALJ found Plaintiff's medically determinable impairments could

13  reasonably be expected to cause some of the alleged symptoms; however,

14  Plaintiff's "statements concerning the intensity, persistence and limiting effects of

15  these symptoms are not entirely consistent with the medical evidence and other

16  evidence in the record" for several reasons.  Tr. 20.

17       First, the ALJ found that

18  [p]erhaps the most compelling factor undermining [Plaintiff's] allegations is
   her course of treatment.  [Plaintiff] has received minimal, sporadic

19  treatment, with no mental health treatment of any kind, despite repeated
   encouragement from doctors to seek psychological care.  If [Plaintiff] were

20  as debilitated as she has alleged, one would expect her to seek more
   extensive treatment, and certainly all treatment recommended by her

21  doctors, even if it is not treatment she believes will help.  It is surprising that
   she has not engaged in treatment options recommended by her providers,

ORDER ~ 15

including counseling.  In any event, she also has not pursued significant physical treatment despite her alleged belief that her symptoms are physically based.  [Plaintiff] admitted she has medical insurance, so cost should not be an insurmountable barrier.  At one point, [Plaintiff] asserted that she had a very high deductible of $5,000.00 or $10,000.00, but she ultimately admitted she did not actually know the amount of her deductible. I find her failure to seek aggressive treatment of any kind for her allegedly debilitating symptoms undermines her allegations.

Tr. 22. Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be the basis for an adverse credibility finding unless there is a showing of a good reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  Here, in support of his finding that Plaintiff failed to seek "recommended" psychological care, the ALJ cites three treatment records, including: (1) Dr. Hu's "recommendation" of "cognitive behavioral therapy by a psychologist experienced in managing functional neurological disorders"; (2) a note from Plaintiff's treating physician to "continue with neurological care recommendations – psychology recommendation"; and (3) a treatment note from a hospitalist in the emergency room indicating that Plaintiff was seen by a neurologist and he "recommended behavioral/holistic treatments." Tr. 22, 421, 442, 472.  As an initial matter, the Court notes that two out of the three records cited by the ALJ to support this finding merely restate the recommendation of Dr. Hu to pursue treatment by a psychologist "experienced in managing functional neurological disorders," but they do not rise to the level of substantial evidence to support the ALJ's finding that Plaintiff was "repeated[ly] encouraged [by] doctors to seek psychological care."  Tr. 22. Instead, the Court's review of the record

ORDER ~ 16

indicates that (1) her treating physician referred her for a single "routine" psychological visit, (2) Plaintiff testified that her primary doctor "doesn't feel like this is psychological," and (3) a treating emergency room physician observed a movement disorder and specifically noted he did "not think it [was] psychogenic or functional." Tr. 39, 330, 444. The ALJ also did not appear to consider Plaintiff's testimony that the treating physician's referral to the psychologist was based on her own request, rather than the recommendation of Dr. Hu. Tr. 40. Finally, the Court notes that the precise recommendation from Dr. Hu was "cognitive behavior therapy by a psychologist *experienced in managing functional neurological disorders*." Tr. 421 (emphasis added). However, as discussed below, the ALJ failed to properly consider Plaintiff's explanation for any alleged failure to pursue treatment with a specialist in functional neurological disorders. For all of these reasons, the Court finds the ALJ's rejection of Plaintiff's symptom claims based specifically on her failure to pursue mental health treatment, was not supported by substantial evidence.

Next, the ALJ discounted Plaintiff's symptom claims because she "has not pursued significant physical treatment." Tr. 22. However, as noted by Plaintiff, she has undergone testing and traveled to Seattle for evaluation at the UWMC Neurology Clinic. ECF No. 15 at 17 (citing Tr. 39, 417-26). Moreover, pursuant to Social Security Ruling 16-3p, an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering

possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."  Social Security Ruling ("SSR") 16-3p at *8-*9 (March 16, 2016), *available at* 2016 WL 1119029.  Here, Plaintiff testified that her treating physician referred her to a "dystonia specialist" at a "specialty facility" in Tacoma, "but the only person that was in when [she] went to see him was that MS specialist," and that person diagnosed a "movement disorder" but said Plaintiff would have to "come back another time to see a dystonia specialist."  Tr. 43-44.  However, Plaintiff further testified that making that after this visit they went "medically bankrupt" after consistent ER visits and other medical bills, and were therefore unable to follow through on seeing the dystonia specialist at a later time because they were not allowed to visit the same facility that "was a part of" their medical bankruptcy.  Tr.  44-45.  The ALJ did not consider this testimony, nor did he consider Plaintiff's report that after the only remaining local specialist in dealing with her alleged impairment moved away, Plaintiff did try to follow up with a local neurologist, but they said "no, we don't specialize in what is going on with you. [You] need to see a movement specialist." Tr. 46.  The Court finds the ALJ failed to properly consider whether Plaintiff's failure to pursue "aggressive treatment" was at least partially based on an inability to gain access to specialized treatment.

In addition, as noted by Plaintiff, "any alleged lack of treatment or conservative treatment can be explained by her past bankruptcy, outstanding

ER/ambulance bills, and the inability to afford paying the amount necessary to meet her deductible." ECF No. 15 at 17. "Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). The ALJ generally found that because Plaintiff has medical insurance, "cost should not be an insurmountable obstacle," and noted that Plaintiff testified she had a very high deductible but "admitted she did not know the exact amount of her deductible." Tr. 22, 54-55. However, the Court finds the ALJ's cursory dismissal of Plaintiff's explanation that she could not afford treatment simply because she had medical insurance, with no further investigation as to her testimony regarding bankruptcy, her ongoing medical expenses, or the out-of-pocket cost of specialized medical treatment, was not supported by substantial evidence. *See* Tr. 55 (ALJ noted surprise that a deductible could reach up to $10,000.00). Thus, the ALJ erred by failing to consider whether inability to afford treatment was a good reason for any alleged failure to pursue "aggressive" treatment. Based on the foregoing, he ALJ's rejection of Plaintiff's symptom claims because she failed to pursue mental and physical treatment, was not clear, convincing, and supported by substantial evidence.

Second, the ALJ found that Plaintiff's reported activities were "inconsistent with a finding of disability." Tr. 22. A claimant need not be utterly incapacitated in order to be eligible for benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.

ORDER ~ 19

1989); *see also Orn*, 495 F.3d at 639 ("the mere fact that a plaintiff has carried on

certain activities . . . does not in any way detract from her credibility as to her

overall disability."). Regardless, even where daily activities "suggest some

difficulty functioning, they may be grounds for discrediting the [Plaintiff's]

testimony to the extent that they contradict claims of a totally debilitating

impairment." *Molina*, 674 F.3d at 1113. Here, in support of this finding, the ALJ

cites evidence that Plaintiff is fully responsible for her children and their daily

care, shops for groceries and prepares meals, does chores, goes outside daily,

exercises between three and six miles per day, and works part-time as a preschool

teacher. Tr. 22 (citing Tr. 219-21, 460, 472, 495). The ALJ concludes that these

activities are "not what one would expect from an individual who is as debilitated

as [Plaintiff] alleges she is." Tr. 22.

However, in making a credibility finding, the ALJ "must specifically

identify the testimony she or he finds not to be credible and must explain what

evidence undermines the testimony." *Holohan,* 246 F.3d at 1208. Here, Plaintiff

testified that she is scheduled to work 3 hours per day, five days per week, for a

total of fifteen hours per week; however, she misses ten hours per month due to her

impairments, "usually about three days in a row." Tr. 47-48. Moreover, the same

function reports cited by the ALJ specifically indicate that Plaintiff's is able to

perform the activities cited by the ALJ unless she is in a "storm period" in which

case she is "unable to do anything except be in bed." Tr. 218-24. Plaintiff has also

ORDER ~ 20

reported that she runs 3-6 miles regularly in an effort to "depress the dystonia flares," and to help her psychologically. Tr. 51-52, 460, 472, 495.  Thus, as noted by Plaintiff, while she is "functional and able to perform a wide range of activities while healthy – including part-time work – she asserts disability based on debilitating dystonia episodes occurring monthly," during which she suffers "wide-spread spasms, facial tics, headaches, confusion, weakness, and difficulty ambulating, resulting in missed days of work and the need for bed rest three days per month."  ECF No. 15 at 19 (citing Tr. 42-43, 47-52, 294).

The Court finds the ALJ failed to offer a sufficient explanation as to how Plaintiff's claim that she is completely unable to function *only* during a dystonia "storm," is inconsistent with her own reports that she is able to care of for her children, do household chores, go shopping, exercise, and work part-time when she is not experiencing dystonia "storms" several days per month.  Therefore, the ALJ's reliance on inconsistency between Plaintiff's "reported activities," and her specific claim that she is unable to perform those activities only during "dystonia storms," does not rise to the level of a clear and convincing reason, supported by substantial evidence, to discredit the entirety of Plaintiff's symptom claims.  In particular, in light of the need to reconsider the step two finding, as discussed in detail above, the ALJ must reconsider Plaintiff's symptom claims regarding her dystonia, on remand.

Third, the ALJ found Plaintiff's "weak work history also suggests the explanation for her ongoing underemployment is likely something other than her current medical condition." Tr. 22. In support of this finding, the ALJ notes that Plaintiff alleged onset of symptoms in 2012, "yet her earnings started decreasing in 2010, and she had virtually no earnings in 2011. This pattern confirms that her unemployment/underemployment has its genesis in something other than her medical impairments." Tr. 22, 186. An ALJ may consider that a claimant stopped working for reasons unrelated to the allegedly disabling condition when weighing the Plaintiff's symptom reports. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). However, Plaintiff's work history prior to her alleged onset date are generally of limited probative value. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). Moreover, the ALJ offers no evidence of a specific reason Plaintiff's earnings decreased in 2011 that is unrelated to her allegedly disabling condition; nor does the ALJ consider that regardless of "a severe dip" in her earnings from 2011-2012, she had strong earnings prior to 2011, and has continued to work part-time throughout the relevant adjudicatory period. ECF No. 15 at 19-20. Finally, as noted by Plaintiff, the ALJ's reliance on Plaintiff's "weak" work history as a reason to discount her symptom claims is inconsistent with his own finding that she continued to work "part-time as a preschool teacher, which can be challenging, both physically and mentally." ECF No. 15 at 20; Tr. 22. For all of these reasons, the ALJ's rejection of Plaintiff's

symptom claims based on her work history is not clear, convincing, and supported by substantial evidence.

Fourth, and finally, the ALJ found that "unremarkable neurological evidence – which includes neurological workups and exams in which [Plaintiff's] symptoms ceased with distraction, even when [Plaintiff] complained of and demonstrated significant symptoms – does not support a finding of disability." Tr. 21-22. The medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2). In support of this finding, the ALJ cited normal brain MRI results, normal EEG results, unremarkable CT of the brain and neck, cessation of twitching movements when distracted, and normal ambulation. Tr. 21 (citing Tr. 421, 441, 469, 483, 486). As discussed in detail above, Plaintiff argues that "objective examination routinely notes left-sided face twitching, and treatment providers have directly observed contemporaneous dystonia 'storms,'" that include widespread muscle spasm, abnormal scissoring gait, and using a walker to ambulate. ECF No. 15 at 16-17 (citing Tr. 407, 421, 442, 475).

However, regardless of whether the ALJ erred in finding Plaintiff's symptom claims were not corroborated by objective testing and physical examinations, it is well-settled in the Ninth Circuit that an ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261

ORDER ~ 23

F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  As discussed in detail above, the additional reasons given by the ALJ for discounting Plaintiff's symptom claims were legally insufficient.  Thus, because lack of corroboration by objective evidence cannot stand alone as a basis for a rejecting Plaintiff's symptom claims, the ALJ's finding is inadequate.

The Court concludes that the ALJ did not provide clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.  On remand, the ALJ must reconsider Plaintiff's symptom claims

## C. Additional Assignments of Error

Plaintiff additionally argues that the ALJ improperly rejected the opinion of medical expert Howard Shapiro, M.D., erred at step three, improperly rejected the lay witness testimony, and erred at step five.  ECF No. 15.  However, the ALJ's error at step two alone requires remand for proper consideration of Plaintiff's claimed impairments and to reconsider each of the remaining steps in the five-step sequential evaluation, incorporating any additional impairments and work limitations possibly caused by Plaintiff's claimed physical impairments.  Moreover, because the analysis of these additional errors is dependent on the ALJ's reevaluation of Plaintiff's symptom claims, the Court declines to address these challenges here.  On remand, the ALJ is instructed to reconsider the step two

findings and Plaintiff's symptom claims, and conduct a new sequential analysis, including a reassessment of the step five finding if necessary.

### REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

The Court finds that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014)

ORDER ~ 25

(remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ erred at step two and improperly considered Plaintiff's symptom claims, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. Instead, the Court remands this case for further proceedings. On remand, the ALJ should reconsider the step two finding, and reevaluate Plaintiff's symptom claims. The ALJ should also reconsider the medical opinion evidence, and provide legally sufficient reasons for evaluating the opinions, supported by substantial evidence. If necessary, the ALJ should order additional consultative examinations and, if appropriate, take additional testimony from a medical expert. Finally, the ALJ should reconsider the remaining steps in the sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

**ACCORDINGLY, IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 15, is **GRANTED**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

2. Defendant's Motion for Summary Judgment, ECF No. 16, is **DENIED**.

ORDER ~ 26

3.  Application for attorney fees may be filed by separate motion.

The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** September 3, 2021.



Stanley A. Bastian
Chief United States District Judge

ORDER ~ 27